967 So.2d 924 (2007)
Valerie KELLEY, Appellant,
v.
Hazen Peter KELLEY, Appellee.
No. 2D06-712.
District Court of Appeal of Florida, Second District.
December 6, 2006.
Rehearing Denied January 10, 2007.
Jean Marie Henne, Winter Haven, for Appellant.
T.W. Weeks, III, Lakeland, for Appellee.
ALTENBERND, Judge.
Valerie Kelley (the Wife) appeals a final judgment of dissolution of marriage, challenging the trial court's failure to award her a greater amount of monthly permanent periodic alimony and the full amount of the reasonable attorneys' fees she incurred in the litigation. Based upon the evidence presented to the trial court, we conclude the trial court abused its discretion in failing to award the Wife a greater amount of permanent periodic alimony. We therefore reverse and remand for further proceedings, at which time the Wife's request for attorneys' fees should also be reconsidered.
The parties were married for over twenty-nine years. They have two grown children. They had accrued over $1.6 million in assets over the course of the marriage, which the court equitably distributed in the final judgment. The majority of the Wife's share of equitable distribution consisted of the family home valued at $240,000, the contents of that home, and a retirement account worth $245,000. It was *925 undisputed that the Wife was a homemaker throughout the marriage and provided the primary care for the children when they were young. The Wife was unemployed at the time of the hearing and had not been employed for over twenty-three years. She was fifty-six years old.
The Husband had been the primary wage earner throughout the marriage. At the final hearing, he testified that he earned gross income of $153,367 ($12,780.58 per month) and net income of $137,533 ($11,461.10 per month) in 2004. Although the Husband feared his income might decrease in the future, there was no specific evidence that this would occur. The Husband, who was fifty-two years old, testified that he hoped to retire at age fifty-five.
The Husband conceded that the Wife was entitled to permanent periodic alimony. The dispute at trial centered on the monthly amount of such support. The Wife's financial affidavit listed total monthly expenses of $5821 per month. Because the Husband earned a net monthly income of almost two times this amount, the focus was primarily on the reasonableness of the Wife's needs, not the Husband's ability to pay.
The Wife conceded that although she had thus far had no luck finding employment, she could become employed at minimum wage. In addition, the Wife acknowledged that some of the assets distributed to her could produce income to meet her needs.[1] Based upon these two sources, the Wife estimated that she could provide $2450 toward her own support.[2] After considering the income tax implications regarding the payment of alimony, the Wife calculated that she would need $3883.10 per month in permanent periodic alimony to meet the remainder of her expenses.
The Husband presented testimony calling into question specific expenses listed on the Wife's financial affidavit. For example, he testified that the Wife should need $60 less than the amount listed for lawn care, $25 less for pool care, and $192 less for health insurance. He noted that a $280 per month expenditure for counseling could be avoided if the Wife chose a different provider from within the Wife's health insurance plan. He also suggested that the Wife unreasonably traded in a 1994 vehicle and acquired a monthly car payment of approximately $500.[3] He made more general complaints about the amount she listed for gas expenses, home repair, and personal grooming expenses, but he provided no testimony on what a reasonable monthly expense would be for these necessary items.
The trial court indicated that it felt some of the Wife's expenses were inflated. Without indicating what specific expenses were unreasonable, or what amounts were appropriate based upon the evidence presented, the trial court awarded the Wife $1585 per month in alimony. This, coupled with the imputed income the Wife conceded she could earn by working full-time at minimum wage and from collecting the income produced by her assets, provided the Wife gross income of $4035. It *926 leaves the Husband with gross income of $11,195excluding the income he can indisputably earn from his share of the equitable distribution of assets.
We recognize, of course, that the resulting difference in the parties' income, in excess of $7000 per month, while facially very troubling, is not dispositive of this issue. However, even if the trial court had accepted in its entirety the monthly expense figures suggested by the Husband, the Wife had unchallenged needs in excess of $4500 per month. Nevertheless, the trial court awarded an amount of money that would leave the Wife, under the best of circumstances, with a gross incomenot net incomeof approximately $4000. It is obvious that the Wife will be compelled to either radically alter her standard of living or dissipate assets that will be needed for her retirement. This decision was made in the context of a dissolution proceeding in which the Husband is already suggesting that he will attempt early retirement at age fifty-five.[4]
A primary purpose of permanent, periodic alimony is to allow the requesting spouse, consistent with her needs, to maintain the standard of living established by the parties during the marriage. See Griffin v. Griffin, 906 So.2d 386, 388 (Fla. 2d DCA 2005).
"The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds." Canakaris [v. Canakaris], 382 So.2d [1197,] 1201 [(Fla.1980) ]. However, a trial court must be careful that "neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, one spouse should not be `shortchanged.'" Id. at 1204.
Cleary v. Cleary, 872 So.2d 299, 304 (Fla. 2d DCA 2004).
Based upon the evidence presented, the trial court abused its discretion in awarding an amount of alimony that left the Wife substantially unable to meet her basic needs, let alone enjoy the standard of living she enjoyed during the marriage. We therefore reverse the award of permanent periodic alimony and remand for the trial court to award an amount that is commensurate with the Wife's needs.[5]
The Wife also challenges the trial court's decision to award her only a portion of the reasonable attorneys' fees she incurred during the proceedings. If we were not reversing the alimony portion of this judgment, we would still have concluded that the trial court abused its discretion in failing to award the Wife all of the attorneys' fees the Wife reasonably incurred based upon the substantial financial disparity that remained under the provisions of the final judgment. See Anciaux v. Anciaux, 666 So.2d 577 (Fla. 2d DCA 1996). On remand, after the court reconsiders and establishes an appropriate amount of permanent periodic alimony, the court must address anew the Wife's request for a contribution to her attorneys' fees. However, the propriety of any new award will *927 vary depending upon the trial court's decision regarding alimony.
Reversed and remanded.
DAVIS and VILLANTI, JJ., Concur.
NOTES
[1] Because a portion of the assets distributed to the Wife would require a penalty if she withdrew the funds prior to retirement, the Husband's equitable distribution might produce more income available to him prior to his reaching traditional retirement age.
[2] We do not question the wisdom of the Wife's demonstration of good faith in making these tactical concessions, even though a trial judge would not have been required to make comparable factual findings or conclusions of law based upon the evidence presented.
[3] The Husband drives a 2001 Ford F150 truck, on which no money is owed.
[4] Whether a voluntary early retirement on the part of the Husband in the future would permit him to avoid or reduce his support obligations will depend upon the analysis in Pimm v. Pimm, 601 So.2d 534 (Fla.1992); see also Rogers v. Rogers, 746 So.2d 1176 (Fla. 2d DCA 1999), disapproved on other grounds, Acker v. Acker, 904 So.2d 384 (Fla.2005).
[5] If the parties' circumstances have not changed, the trial court may be able to address these issues without the need for further evidence. Hopefully, the parties can streamline the process of providing any additional evidence if such evidence is truly needed.