GERBER, J.
The wife appeals from the circuit court’s amended final judgment of dissolution of marriage. The- wife primarily argues that the court erred in not awarding her permanent alimony because: (1) even though the marriage was a long term marriage under section 61.08, Florida Statutes (2014), the court did not find that a rebut-table presumption existed in favor of permanent alimony; (2) the court’s findings were insufficient to rebut the presumption in favor of permanent alimony; and (3) permanent alimony is appropriate. We agree with these arguments and reverse.
We present this opinion in. three parts:
1. the procedural history;
2. the standard of review and examination of section 61.08; and
3. an examination of the wife’s arguments on appeal.

Procedural History

The husband' petitioned for dissolution after eighteen years of marriage. The wife counter-petitioned for alimony and child support. At the time of trial, the husband was a fifty-three-year-old full-time physician, earning a gross annual income of $205,704.00. The wife was a fifty-five-year-old stay-at-home mother. Up until the time that the dissolution action was filed, the wife had not held a job outside of the home in over twenty years. After the dissolution action was filed, the wife began working at miscellaneous jobs making $10-$12 per hour.
The husband’s vocational expert interviewed the wife to determine her employment possibilities. The expert testified that the wife has a college degree in social work, but at the time of trial, no longer was qualified to re-enter that field. The wife expressed an interest in the education field, but also expressed a need for flexible job in order to tend to the parties’ minor child’s needs. After reviewing current area job postings, the husband’s expert concluded that the wife could earn $8 to $10 per hour ($16,640 to $20,800 per year) in retail sales or clerical support positions. With minimal computer training, for which free instruction was available, the wife could earn between $20,800 and $26,000 per year. With some additional training, the wife could work as a substitute teacher, and later, a full-time teacher in the public school system. At the time of trial, substitute teachers in the area made $13 per hour, and could work 180 days a year, for a yearly income of $16,380. Full-time area teachers started at $39,000, with benefits. The wife acknowledged she could no longer live a lavish lifestyle, and said she “ha[d] no problem with that.” In accordance with a prior temporary support order, the husband was paying the ■ wife $4,279 per month.
In the final judgment, the trial court addressed all relevant statutory findings under section 61.08(2)(a)-(j), Florida Statutes (2014); imputed a gross yearly income to the wife of $18,200, or a little over $1,500 a month; found that that “she could earn a starting teachers [sic] salary of $39,000.00 with benefits in a period of approximately two years”; and determined that the wife’s reasonable monthly needs amounted to $6,000 per month. The court then awarded the wife durational alimony of $4,500 per month for ten years.
This appeal followed. The wife primarily argues that the trial court erred in not *821 awarding her permanent alimony because: (1) even though the marriage was a long term marriage under section 61.08, Florida Statutes (2014), the court’s final judgment did not find that a rebuttable presumption existed in favor of permanent alimony; .(2) the court’s findings were insufficient to rebut the presumption in favor of permanent alimony; and (3) permanent alimony is appropriate in this ease.
2. The Standard of Review and an Examination of Section 61.08
. “We review the trial court’s award of durational alimony for an abuse of discretion.” Motie v. Motie, 132 So.3d 1210, 1213 (Fla. 5th DCA 2014) (citation omitted). “Although the trial court has considerable discretion in determining an award of alimony, that discretion is not unlimited.” Id. (citation omitted). “Where a trial judge fails to apply the correct legal rule ... the action is erroneous as a matter of law.” Ondrejack v. Ondrejack, 839 So.2d 867, 870 (Fla. 4th DCA 2003) (alteration, citation, and quotation marks omitted).
Section 61.08, Florida Statutes (2014), governs alimony awards and provides in pertinent part:
(1) In a proceeding for dissolution of marriage, the court may grant alimony to either party, which alimony may be bridge-the-gap, rehabilitative, durational, or permanent in nature or any combination of these forms "of alimony. In any award of alimony, the court may order periodic payments or payments in lump sum or both....
§ 61.08(1), Fla. Stat. (2014).
The statute lists factors for the court to consider, including the duration of the marriage; the parties’ ages, financial resources and earning capacities; their “educational levels, vocational skills, and em-ployability”; and their contributions to the marriage, including homemaking and child care. § 61.08(2), Fla. Stat. (2014). The statute further provides “there is a rebut-table presumption that a ... long-term marriage is a marriage having a duration of 17 years or greater.” § 61.08(4), Fla. Stat. (2014). The statute then describes the different types of alimony.
Pertinent to this appeal are durational alimony and permanent alimony. The statute describes them respectively as follows:
(7) Durational alimony may be awarded token 'permanent periodic alimony is inappropriate. The purpose of dura-tional alimony is to provide a party with economic assistance for a set period of time following a marriage of short or moderate duration or following a marriage of long duration if there is no ongoing need for support on a permanent basis. An award of durational alimony terminates upon the death of either party or upon the remarriage of the party receiving alimony. The amount of an award of durational alimony may be modified or terminated based upon a substantial change in circumstances in accordance with s.61.14. However, the length of an award of durational alimony may not be modified except under exceptional circumstances and may not exceed' the length of the marriage.
(8) Permanent alimony may be awarded to provide for the needs and necessities of life as théy were established during the marriage of the parties for a party who lacks the financial ability to meet his or her needs and necessities of life following a dissolution of marriage. Permanent alimony may be awarded following a marriage of long duration if such an award is appropriate upon consideration of the factors set forth in subsection (2) .... In awarding permanent alimony, the court shall include a finding that no other form of alimony is fair and reasonable under the circum *822 stances of the parties. An award of permanent alimony terminates upon the death of either party or upon the remarriage ■ of the party receiving alimony. Am award may be modified or terminated based upon a substantial change in circumstances or upon the existence of a supportive relationship in accordance with s.61.14.
§ 61.08(7), (8), Fla. Stat. (2014) (emphasis added).
3. The Wife’s Arguments on Appeal
a. The Trial Court’s Final Judgment Did Not Find that a Rebuttable Presumption Existed in Favor of Permanent Alimony
The wife first argues that even though the marriage was a long term marriage under section 61.08, Florida Statutes (2014), the trial court’s final judgment did not find that a rebuttable presumption existed in favor of permanent alimony. We agree. See § 61.08(4), Fla. Stat. (2014); Dickson v. Dickson, 204 So.3d 498, —, 41 Fla. L. Weekly D1807, 1808, 2016 WL 4132704 (Fla. 4th DCA Aug. 3, 2016) (“Our courts recognize that with respect to long-term marriages, there is a rebuttable presumption in favor of permanent alimony,”).
The husband argues that the legislature’s creation of durational alimony in 2010 nullified the presumption in favor of permanent alimony for a long-term marriage. See Taylor v. Taylor, 177 So.3d 1000, 1002 (Fla. 2d DCA 2015) (“Section 61.08 was amended in 2010 to authorize an award of ‘durational’ alimony.... Ch. 2010-199, § 1, at 2405-08, Laws of Fla. The terms and conditions for durational alimony were further refined in an amendment in 2011. See ch. 2011-92, § 79, at 1703-04, Laws of Fla.”).
However, as the husband recognizes, following the 2010 and 2011 amendments, this court and three of our sister courts have recognized that the presumption in favor of permanent alimony after a long-term marriage still exists, See Sherlock v. Sherlock, 199 So.3d 1039, 1043, 41 Fla. L. Weekly D1601, D1602 (Fla. 4th DCA 2016); Motie v. Motie, 132 So.3d 1210, 1213 (Fla. 5th DCA 2014); Ayra v. Ayra, 148 So.3d 142, 143 (Fla. 2d DCA 2014); Broemer v. Broemer, 109 So.3d 284, 289 (Fla, 1st DCA 2013). We stand by that recognition.
b. The Court’s Findings Were Insufficient to Rebut the Presumption in Favor of Permanent Alimony
The wife next argues that the court’s findings were insufficient to rebut the presumption in favor of permanent alimony. We agree. As the second district recognized in a similar case:
The difficulty that this court faces on review of the trial court’s judgment is that the .trial court did not expressly decide that permanent periodic alimony was “inappropriate,” See § 61.08(7). Likewise, it did not find that there was “no ongoing need for support on a permanent basis.” See id. Although these determinations may sometimes be implicit within the findings made under subsection 61.08(2), in this case the findings give us no guidance as to why permanent alimony was inappropriate. Given .that the Wife does not have a history of fulLtime employment with benefits and that the court actually imputed income.to her, we cannot assume that the trial court made a proper, implicit finding that she had “no ongoing need for support on a permanent basis.”
Taylor, 177 So.3d at 1004 (citations omitted). See also Julia v, Julia, 146 So.3d 516, 522 (Fla. 4th DCA 2014) (reversing award of durational alimony where findings were insufficient to support the *823 award). Cf. Fichtel v. Fichtel, 141 So,3d 593, 595 (Fla. 4th DCA 2014) (affirming an award of durational alimony for a long-term marriage where the trial court found that “durational alimony [wa]s warranted and ,. no other form of alimony [wa]s appropriate,” and the final judgment indicated that the trial court considered each of the factors in subsection 61.08(2)).
Here, as in Taylor, the court’s findings give us no guidance as to why permanent alimony was inappropriate. As in Taylor, given that the wife here “does not have a history of full-time employment with benefits and that the court actually imputed income to her, we .cannot assume that the trial court made a proper, implicit finding that she had ‘no ongoing need for support on a permanent basis.’” Taylor, 177 So.3d at 1004.
c. Permanent Alimony is Appropriate in this Case
The wife lastly argues that permanent alimony is appropriate in this case. We agree.
“The primary factors for a court to consider when awarding alimony are the requesting spouse’s need and the other spouse’s ability to pay.” Sherlock, 199 So.3d at 1043.
Here, the court found that the “[h]us-band has the ability to pay the [w]ife alimony and the [w]ife needs the same.” The court found that the husband “continues to practice medicine, earning a gross monthly income of $17,142.00 or stated differently, a gross yearly income prior to taxes of $205,704.00.”
The court further found that the wife was fifty-five years old; she has not worked full-time since 1994; after 1994, she has been a stay-at-home mother taking care of the parties’ children; and since the dissolution proceedings began, she has worked “numerous different jobs” earning between $10 and $12 an hour. The court then imputed a gross yearly income to her of $18,200, or a little over $1,500 a month; found that “she could earn a starting teachers [sic] salary of $39,000.00 with benefits in a, period of approximately two years”; and determined that the wife’s reasonable monthly needs amounted to $6,000 per month.
It appears that the trial court’s reliance on the husband’s vocational expert’s testimony that the wife “could earn a starting teachers [sic] salary of $39,000.00 with benefits in a period of approximately two years” (emphasis added) “was based on mere speculation, and ... [was] not a proper consideration in determining her entitlement to permanent alimony.” Alcantara v. Alcantara, 15 So.3d 844, 846 (Fla. 3d DCA 2009). The record reflects that the wife never taught school, nor did she have teaching credentials at the time of trial. In the event that the wife gets a teaching job and her income substantially increases, then the issue of alimony may be reconsidered in a modification action. See id. at 846 n. 3.
Further, even if the trial court properly considered the wife’s possible career as a teacher, the evidence reflects that her work life expectancy in that career is age sixty-five. When the trial court asked the husband’s vocational expert about the wife’s work life expectancy, the husband’s vocational expert responded: “Well, usually to 65. Teaching, they usually go after 20 years, but they try to encourage people to go on DROP after about age 65.” Given that response, the court’s finding to cease the wife’s durational alimony payments at that age would cause the wife to be unable to meet her needs beyond that age, thus reflecting her ongoing need for support on a permanent basis.

*824
Conclusion

The trial court erred in not awarding the wife permanent alimony because: (1) even though the marriage was a long term marriage, the court did not find that a rebutta-ble presumption existed in favor of permanent alimony; (2) the court’s findings were insufficient to rebut the presumption in favor of permanent alimony; and (3) permanent alimony is appropriate in this case. Based on the foregoing, we reverse the amended final judgment’s award of dura-tional alimony, and remand for the trial court to award the wife permanent alimony in an amount to be determined.
As to the wife’s other arguments on appeal, we affirm without further discussion.

Affirmed in part, reversed in part, and remanded.

CONNER, J„ and CROOM, JANET, C., Associate Judge, concur.